**IDEAL STENCIL MACHINE AND TAPE CO., Plaintiff,**

v.

**Alberto MERCHIORI, International Staple and Machine Co., Umberto Monacelli, Shippers Supply & Service Co., and Maggie James, Defendants.**

Civ. No. 84–3120.

United States District Court, S.D. Illinois, East St. Louis Division.

Jan. 9, 1985.

Phillip A. Montalvo, Belleville, Ill., for plaintiff.

John A. Bock, Jr., Belleville, Ill., for defendants.

### MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Before the Court are defendant Alberto Merchiori's Motion to Dismiss (Document No. 4), defendant International Staple & Machine Co.'s Motion to Dismiss (Document No. 6 and 8), defendant Shippers Supply & Service Co.'s Motion to Dismiss (Document No. 7), and defendant Umberto Monacelli's Motion to Dismiss (Document No. 18).

In its complaint, the plaintiff alleges the following facts to support its RICO claims. For numerous years the plaintiff sold goods to Shippers Supply & Service Co. (Shippers Supply) a sole proprietorship owned and operated by Mr. and Mrs. Nixon. On August 15, 1983, unbeknownst to the plaintiff, the defendant International Staple and Machine Co. (International) purchased Shippers Supply. Thereafter, "defendant Shippers Supply, as an 'enterprise,' engaged in a 'racketeering activity,' in conspiracy and in concert with defendants Merchiori (agent of International and former president of plaintiff), International, Monacelli (president, treasurer, and chief executive officer of International), and James (branch manager of Shippers Supply) ..." to defraud the plaintiff by placing a number of orders with the plaintiff for various products totaling $24,342.35 and unlawfully converting the products to their own use. The plaintiff alleges that these goods traveled in interstate commerce and that the defendants utilized the United States mail in furtherance of these transactions. The plaintiff contends that these activities constitute mail fraud, wire fraud, conversion, and fraudulent misrepresentation, which amount to a pattern of racketeering activity.

### A. PERSONAL JURISDICTION

The defendants raise a number of arguments in support of their Motions to Dismiss. Defendants International, Shippers Supply, and Umberto Monacelli contend that this Court lacks personal jurisdiction over them. International asserts that it is a corporation organized under the laws of Pennsylvania with its principle corporate offices in Butler, Pennsylvania, and that Shippers Supply is a wholly-owned branch of International which conducts its business in Georgia. Likewise, Monacelli asserts that he does not reside in Illinois and that he is an officer of International, a non-Illinois corporation.

Personal jurisdiction is based on a combination of two elements, amenability to jurisdiction and service of process. *Ter-*

*ry v. Raymond International, Inc.*, 658 F.2d 398, 401 (5th Cir.1981), *cert. denied*, 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 443 (1982). Both must be present to authorize a district court to adjudicate the case. *Id.* Amenability refers to the substantive reach of the forum's jurisdiction. Amenability has both state law and federal constitutional significance. Service of process is the physical means by which jurisdiction is asserted. Applying these principles the courts have developed three tests to determine if a court possesses personal jurisdiction over a defendant: (1) the assertion of jurisdiction by the law of the forum; (2) conformity of this law with the Constitution; and (3) authority for the means of service of process. *Id.* The first two tests apply to amenability and the third test applies to service of process.

■ In a diversity case, the amenability portion of the above tests consists of the following analysis. First, state law (usually the state Long-Arm Statute or case law "doing business" requirement) must assert jurisdiction over the defendant for the cause of action at issue in the suit. *Id.* Second, the exercise of personal jurisdiction over the defendant must be consistent with the due process clause of the fourteenth amendment. This inquiry consists of deciding whether the defendant has minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantive justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). *Terry*, 658 F.2d at 401.

■ In a federal question case, the amenability position of the above tests become less complex. First, since federal statutes have force throughout the United States, the assertion of jurisdiction arises only in the context of nonresident alien. *Id.* Second, the exercise of personal jurisdiction over the defendant must be consistent with the due process clause of the fifth amendment, but the standards are similar to those of the fourteenth amendment. *Holt v. Klosters Rederi A/S*, 355 F.Supp.

354 (W.D.Mich.1973). The inquiry consists of deciding whether the defendant has minimum contacts with *the United States* such that the maintenance of the suit does not offend traditional notions of fair play and substantive justice. Obviously this constitutional standard would only be applied in cases where the defendant was a nonresident alien since every resident would have the requisite contacts with the United States. Further, with the existence of strict venue provisions, it is unnecessary to limit this constitutional minimum contacts inquiry to the state in which the district court sits. Any fairness argument by an United States resident would be eliminated by the venue provisions authorizing transfer. In *Handley v. Indiana & Michigan Elec. Co.*, 732 F.2d 1265 (6th Cir.1984), the Sixth Circuit held that in a federal question case, the due process clause of the fifth amendment requires that it be "fair" for the defendant to litigate in the state where the district court sits. However, the *Handley* court did not consider the interplay of the venue provision. Pursuant to 28 U.S.C. § 1391(b) venue for a federal question case is proper only in the judicial district where *all* the defendants reside or where the claim arose. If the claim were brought in the judicial district where the defendant resides, then obviously there would be no personal jurisdiction problem. When the case is brought in the judicial district where the claim arose, severe unfairness to the defendant would justify the court transferring the case to the district in which the defendant resides. Unlike a diversity action where venue would be proper in the district where the plaintiff resides, in a federal question case the small likelihood of any unfairness is more than compensated for by the provision for transfer.

Thus, as a practical matter, the most significant restraint on the personal jurisdiction of federal courts in federal question cases is service of process, the third-part of the three part set. *Terry*, 658 F.2d at 403.

■ With regard to service of process prong of the above test, under Fed.R.Civ.P. 4 either federal or state methods of service

are authorized. Congress has permitted nationwide service of process in several specialized statutes. *See, e.g.,* 28 U.S.C. § 2361 (1978) (interpleader); 15 U.S.C. §§ 5, 22, 25 (1973) (federal antitrust laws); 15 U.S.C. § 77v(a) (1971) (federal securities laws). In those areas where Congress has not so provided, Fed.R.Civ.P. 4 authorizes that process can be served outside the state in which the district sits *only* under the state procedures for extraterritorial service or within the 100 mile area. Generally, this has permitted service on an out-of-state defendant pursuant to a state long-arm statute.[1]

▮ In the present case, the plaintiff brings a RICO action asserting this Court's federal question jurisdiction. Therefore, as espoused above, the only relevant inquiry is whether the defendants can be properly served pursuant to Fed.R.Civ.P. 4 and state law. Generally, under Illinois law, service on an out-of-state defendant is permitted if the defendant does business in the state or submits to service by performing any one of the acts enumerated in the Illinois Long-Arm Statute. The Illinois Long-Arm Statute provides in pertinent part:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State; ...

(b) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this Section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as

though summons had been personally served within this State.

(c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section...

Ill.Stat.Ann.Ch. 110, ¶ 2–209 (Smith-Hurd 1984).

▮ There is nothing before this Court by way of affidavit or otherwise to indicate that the defendants do business in the State of Illinois. In order for jurisdiction to be conferred under the "transacting business" portion of this paragraph, the cause of action must arise from the transaction of the business that purports to give jurisdiction. *Process Church of Final Judgment v. Sanders,* 338 F.Supp. 1396 (N.D.Ill.1972). Where a contract is involved the courts look to where the solicitation took place, where the contract was negotiated, where it was to be performed, and where delivery under the contract was to take place. See *Tabor & Co. v. McNall,* 30 Ill.App.3d 593, 333 N.E.2d 562 (1975).

▮ With regard to International, it clearly performed acts sufficient to constitute the transaction of business within the State of Illinois. From its own brief, International states that Shippers Supply is a name for a division of International. An affidavit of Marco Ziniti, sales manager of the plaintiff, indicates that all the orders that were placed by Shippers Supply were initiated by the defendants. All the orders were received in Illinois. Delivery was made from Illinois. Further, the very nature of this action arose out of these orders. Therefore the Court finds that International "transacted business" in Illinois for purposes of the Illinois Long-Arm Statute.

▮ Based on information before it the Court is not in a position to decide whether Shippers Supply is in fact a legal entity. However, as a "division" of Inter-

---

1. In this regard the state long-arm statute could be utilized twice. First, in a diversity action to assert jurisdiction over the out-of-state defendant for amenability purposes; and second to authorize service on the out-of-state defendant in both diversity and federal question cases.

national, it was transacting business in the State of Illinois for purposes of the Illinois Long-Arm Statute. As an officer of International, Umberto Monacelli was transacting business within the State of Illinois for purposes of the Long-Arm Statute. Therefore, since service of process was proper on these defendants pursuant to the Illinois Long-Arm Statute, it meets the requirements of Fed.R.Civ.P. 4.

## B. VENUE

■ The defendants also argue that venue is improper in this district. The special venue provision found in 18 U.S.C. § 1965 states that a RICO claim may be brought in the district where the defendant resides, is found, has an agent, or transacts his affairs. However, this venue provision is not intended to be exclusive, but rather is intended to liberalize the existing venue provisions of 28 U.S.C. § 1391(b). *Van Shaick v. Church of Scientology of Cal., Inc.,* 535 F.Supp. 1125 (D.Mass.1982). 28 U.S.C. § 1391(b) provides that venue is proper where the claim arose. Although there is no precise test to determine where the claim arose, the Court is of the opinion that this claim arose in this district. As stated earlier in the jurisdictional context, the orders that form the basis for the RICO claim were placed in this district, the defendants' solicitation of the plaintiff's business occurred in this district, and the nonpayment of the orders occurred in this district. See *Munsingwear, Inc. v. Damon Coats, Inc.,* 449 F.Supp. 532 (D.Minn.1978). Therefore the Court holds that venue is proper in the Southern District of Illinois.

■ The defendants next contend that this action should be stayed pending a related state suit in which the plaintiffs are suing the defendants for recovery of the indebtedness on the orders. However, the defendant has not cited, nor has this Court found any case where a federal court stayed an action within its exclusive jurisdiction such as a RICO action. Therefore, the Court sees no reason to stay this RICO action.

## C. CAUSE OF ACTION UNDER RICO

■ With regard to the substantive elements of the Motion to Dismiss, a number of issues are raised. The complaint alleges that Shippers Supply was the enterprise for RICO purposes. Shippers Supply is also a named defendant. The Seventh Circuit has recently held that the "enterprise" and the "person" must be distinct so that the enterprise is not a proper defendant in an action under 18 U.S.C. § 1962(c). *Haroco, Inc. et al. v. American National Bank and Trust Co., et al.,* 747 F.2d 384 at 402 (7th Cir., 1984). Accordingly, Shippers Supply is DISMISSED from this action.

■ The defendants also argued that the plaintiff has failed to allege an organized crime nexus. However, the Seventh Circuit in *Schacht v. Brown,* 711 F.2d 1343 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 508, 509, 78 L.Ed.2d 698 (1983), rejected the notion that RICO applies only to organized crime.

■ Finally, the defendants argue that the complaint fails to state a claim for relief under RICO. The Court agrees. In its complaint, the plaintiff alleges specifically that "Shippers Supply, as an 'enterprise,' engaged in a 'racketeering activity,' in conspiracy and in concert with the defendants...." The Court has already held that Shippers Supply as the enterprise cannot be a named defendant. Additionally, the Court fails to find a provision of 18 U.S.C. § 1962 which grants a cause of action on the *enterprise engaging in the pattern of racketeering activity.* Section 1962(a) makes it unlawful for *a person* who has received income from a pattern of racketeering activity or collection of unlawful debt to invest any part of said income *in an enterprise.* Section 1962(b) makes it unlawful *for a person to acquire an enterprise* through a pattern of racketeering activity. Section 1962(c) makes it unlawful *for a person to conduct an enterprise's affairs* through a pattern of racketeering activity. Section 1962(c) makes it unlawful *for a person* to conspire to violate any of the above provision. Although, the Court

could try to "fit" the plaintiff's complaint into one of the provisions of § 1962, it does not feel obliged to do so even under the liberal pleading requirements of the Federal Rules of Civil Procedure. However, the Court will grant the plaintiff leave to amend its complaint.

Accordingly, the defendant's Motion to Dismiss (Documents No. 4, 6, 7, 8, and 18) are GRANTED in part and DENIED in part. Defendant Shippers Supply is hereby DISMISSED from this action. The plaintiff's complaint is hereby **DISMISSED** for failure to state a claim for relief under 18 U.S.C. § 1962. Plaintiff is **GRANTED** leave to amend its complaint within fifteen (15) days from the date of this Order.

**IT IS SO ORDERED.**